***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award, except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the deputy Commissioner as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Virginia Surety Company was the carrier on the risk with Cambridge Integrated Services as its servicing agent from 31 December 1999 to 31 December 2000.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury as a result of a motor vehicle accident on or about 1 February 2000. Defendants filed an I.C. Form 60 on or about 21 March 2000 and a second Form 60 on 13 April 2000. Plaintiff was released to regular duty work and returned to work on or about 7 April 2000.
5. Based upon the I.C. Form 22, plaintiff's average weekly wage was $977.13, which was sufficient to yield a maximum compensation rate of $588.00 per week.
6. The issues for determination are:
a. Are plaintiff's alleged shoulder impingement problems and rotator cuff problems related to the 1 February 2000 accident?
b. Do defendants have the right to direct medical treatment and should the plaintiff return to Dr. Winfield for any necessary medical treatment that may be related to the incident of 1 February 2000?
c. Is plaintiff entitled to treatment as recommended by Dr. Jerry Barron as a result of the 1 February 2000 accident?
7. The parties stipulated the following documentary evidence:
a. I.C. Forms — 18, 19, 28B, and 60(2);
b. Indiana Accident Report of 1 February 2000 — six pages;
c. Collision Report dated 1 February 2000 — seven pages;
d. Records of Michael D. Lutz, P.A. — four pages;
e. Records of Dr. H. G. Winfield — twelve pages;
f. Records of North Carolina Rehabilitation — two pages;
g. Records of Dr. David DuPuy — three pages;
h. Records of Dr. Michael Dickinson — four pages;
i. Records of Dr. Jerry Barron — twenty-one pages;
j. Records from Concentra — fourteen pages;
k. Employee's Answers to Interrogatories — thirteen pages;
l. 8 March 2002 I.C. Order and related correspondence — two pages;
m. 7 January 2003 I.C. Order setting for hearing and employee's 18 April 2003 Motion and related correspondence — thirty-two pages;
n. Romedical Center Occupational Medicine Patient Encounter Sheet — two pages;
o. Physical Exams of Driver — seven pages;
p. Records of The Hickory Surgical Center — eight pages;
q. Records of Drs. Hoover and Lutz; fifty-one pages; and
r. Health South Functional Capacity Evaluation — fourteen pages.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was sixty-two years old and a high school graduate. He was employed as a long distance truck driver since 12 June 1989. His duties included delivering new trucks from the manufacturer to vendors, modification centers, or customers.
2. On 1 February 2000, plaintiff's truck cab was rear-ended by another tractor-trailer. In the impact, plaintiff hit his seat back and bounced forward, struck the steering wheel and broke his nose. His truck sustained a broken suspension and both rear axles, and split the frame.
3. Plaintiff was treated at the scene by emergency medical technicians. The next morning, he had limited mobility in his neck and left arm. The employer flew him home.
4. On 4 February 2000, plaintiff sought treatment at Mt. View Family Practice, where Dr. Michael Lutz treated him for neck and shoulder pain. Plaintiff returned to Dr. Lutz on 8 February with complaints of left shoulder pain, headaches and some neck pain, as well as multiple contusions. Pain medication and a cervical collar were ordered. Plaintiff made no complaints regarding his right shoulder.
5. On 8 February 2000, plaintiff prepared an I.C. Form 18, on which he indicated he sustained injuries to his head, neck, left arm rotator cuff tear, back, chest and eye. However, he did not note any injuries to the right shoulder.
6. By 14 February 2000, Dr. Lutz diagnosed plaintiff with a cervical sprain and probable contused shoulder. Plaintiff continued to complain of tenderness over the trapezius and along the inferior scapular border and pain with shoulder abduction/ rotation. Dr. Hoover referred him to orthopedic surgeon Dr. H. G. Winfield, III.
7. On 18 February 2000, Dr. Winfield examined plaintiff. In subsequent treatment, he ordered therapy, x-rays, a cervical MRI and a left shoulder injection. The MRI revealed cervical disc disease, and the left shoulder x-rays were negative for fracture. No surgery was recommended. Plaintiff did not report any right shoulder problems to Dr. Winfield.
8. Dr. Winfield released plaintiff to return to regular duty, effective 4 April 2000.
9. Plaintiff requested a second opinion, and defendants referred him to board certified orthopedic surgeon Dr. David DuPuy of Charlotte Orthopedic Specialists.
10. Defendants paid temporary total disability benefits to plaintiff from 2 February 2000 through 7 April 2000, at which time plaintiff returned to work.
11. On 2 May 2000, Dr. DuPuy evaluated plaintiff for chronic overall strain and left shoulder strain with continued fibrositis. Dr. DuPuy reviewed plaintiff's prior treatment records. Plaintiff had tenderness at the left side of the trapezius and left levator scapula, as well as the left glenohumeral joint. He also had discomfort in the rhomboid region. Plaintiff did not voice any complaints regarding his right shoulder during this evaluation. The fibrositis referred to plaintiff's inflammation of connective tissue and the trigger points in the trapezius, levator scapula and rhomboid muscles of the upper back. He rated plaintiff as retaining 5% impairment to his cervical spine.
12. During the 2 May 2000 evaluation, there was no indication of right shoulder joint problems, no right shoulder instability and no limited motion.
13. There is no evidence plaintiff sustained a right rotator cuff tear or partial tear as a result of the 1 February 2000 motor vehicle accident.
14, Between 7 April 2000 and January of 2002, plaintiff did not require treatment for his neck and left shoulder. Instead, he relied on over-the-counter medications for headaches and left shoulder pain. There is no evidence plaintiff required any treatment, even over-the-counter, for his right shoulder.
15. Defendants did not pay plaintiff for the 5% permanent impairment rating, as assigned by Dr. DuPuy as plaintiff would not accept payment.
16. On 30 October 2001, plaintiff completed a second I.C. Form 18, on which he noted injuries to both shoulders, neck, head and abdomen.
17. On 19 January 2002 and 7 February 2002, plaintiff filed Motions, requesting approval of a second opinion with a shoulder specialist. Defendants filed a Response.
18. By Commission Order filed on 8 March 2002, plaintiff was authorized to have defendants pay for a one-time evaluation by an orthopedic shoulder specialist of his choosing.
19. Consequently, on 4 April 2002, plaintiff presented to orthopedic shoulder specialist Dr. Barron for evaluation of bilateral shoulders and neck. Dr. Barron found significant bilateral impingement of the shoulders and significant rotator cuff weakness. Dr. Barron recommended an MRI of both shoulders, to determine the extent of plaintiff's condition, which defendants did not authorize. Dr. Barron also recommended plaintiff see a neck specialist.
20. Between 7 April 2000 and 15 April 2002, plaintiff continued to perform his regular duties, with the exception of being out of work for unrelated injuries.
21. Prior to the date of the MRI, plaintiff was removing cab extenders at work on 15 April 2002 when he slipped and grabbed the truck frame with his right arm to keep from falling to the ground, a distance of almost 30 feet. This incident was accepted as a compensable injury by the workers' compensation carrier who was on the risk subsequent in time to Virginia Surety Company, which has provided necessary care since that time.
22. On 16 April 2002, plaintiff was examined at Romedical Center for the injury the previous day. He reported that he fell as he was climbing to take a C-clamp off, he slipped and caught the weight of his whole body with the right arm. Plaintiff was diagnosed with a right rotator cuff tear, and he was taken out of work until he could be seen by an orthopedist and was given a sling.
23. On 20 April 2002, the right shoulder MRI revealed abnormal signal in the rotator cuff representing impingement from the subacromial spur, as well as moderate AC arthrosis, and a partial cuff tear. The left shoulder MRI indicated no definite impingement and no rotator cuff tear.
24. In the 22 April 2002 follow-up, Dr. Barron diagnosed plaintiff with right shoulder partial versus complete rotator cuff tear with impingement and AC arthrosis and left shoulder impingement and AC arthrosis. Right shoulder repair was recommended. There is no indication plaintiff reported the new right shoulder injury on 15 April 2002 to Dr. Barron. Plaintiff did appear at the appointment with a sling on his right arm, but did not explain why.
25. Plaintiff underwent arthroscopic surgery on 9 May 2002 to debride the right rotator cuff and decompress the right shoulder.
26. After his right shoulder pain continued, plaintiff elected to undergo more right rotator cuff exploration and repair. Dr. Barron performed a right shoulder revision acromioplasty, distal clavicle resection and rotator cuff repair on 29 October 2002.
26. Following therapy, a functional capacity evaluation of 29 April 2003 indicated plaintiff capable of functioning at a sedentary level due to right shoulder decrease in range of motion.
27. Plaintiff reached maximum medical improvement and retains a five percent permanent impairment to his back as a result of the 1 February 2000 motor vehicle accident.
28. Dr. Barron released plaintiff to modified duty with no use of the right arm, as of 31 December 2002.
29. By 2 May 2003, Dr. Barron found plaintiff had reached maximum medical improvement from the right shoulder injury and found him to retain a twenty percent impairment to the right arm. Dr. Barron imposed permanent restrictions of occasional lifting of ten pounds, no overhead lifting, no repetitive motion, and minimal lifting, carrying, pushing and pulling.
30. Based upon the history of injury plaintiff related, Dr. Barron opined plaintiff's right and left shoulder symptoms were causally related to the 1 February 2000 motor vehicle accident and that the 1 February 2000 motor vehicle accident may have aggravated the right shoulder. However, as Dr. Barron's testimony was based on an inaccurate history of the onset of symptoms and the consequences of the 1 February 2000 accident, his opinion is given little weight.
31. There is no competent evidence to support a finding that as a result of the 1 February 2000 motor vehicle accident plaintiff has a left or right rotator cuff or impingement injury nor that he requires any further treatment of his left or right shoulder.
 ***********
The foregoing findings of fact engender the following
 CONCLUSIONS OF LAW
1. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff has failed to prove by competent evidence that he is entitled to additional temporary total disability benefits as a result of the 1 February 2000 motor vehicle accident.
2. Where the exact nature and probable genesis of a particular injury involves complicated medical questions removed from the ordinary experience of the layperson, only a qualified expert witness can give an opinion as to the nature and cause of the injury. Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). The Commission must first determine whether the proffered expert opinion is competent before the opinion can be weighed as evidence in the case. The testimony of a medical doctor is not competent merely because it is uttered by a licensed physician. Expert opinion that rests on speculation and conjecture, or unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury. Youngv. Hickory Business Furniture, 353 N.C. 277, 538 S.E.2d 912 (2000). In the instant case, Dr. Barron's opinion testimony rests on the inaccurate history of onset as related by plaintiff. Therefore, his opinion is given little weight as not sufficiently reliable to qualify as competent evidence on the nature and cause of the injury.
3. As a result of the 1 February 2000 motor vehicle accident plaintiff is entitled to permanent partial disability compensation at the rate of $588.00 per week for fifteen weeks as a result of the 5% rating to the back. N.C. Gen. Stat. § 97-31(23).
4. Plaintiff is entitled to have defendants pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19). This includes the treatment by Dr. Winfield, therapy, testing, and the single evaluations by Dr. DuPuy and Dr. Barron. Plaintiff is not entitled to have defendants pay for any additional testing or treatment by Dr. Barron.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay
permanent partial disability compensation at the rate of $588.00 per week for fifteen weeks for the 5% permanent partial disability rating of the back.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
3. Defendants shall pay medical expenses incurred when bills for the same have been approved, in accordance with the provisions of the Act, in accordance with paragraph 3 of the Conclusions of Law.
4. Defendants shall pay the costs.
This the 27th day of April 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER